515 S.E.2d 93

**In the Matter of George Allen GRAAB, Jr., Respondent.**

**No. 24926.**

Supreme Court of South Carolina.

Submitted Feb. 9, 1999.

Decided March 22, 1999.

George Allen Graab, Jr., of Lexington, pro se.

Henry B. Richardson, Jr., of Columbia, for the Office of Disciplinary Counsel.

PER CURIAM:

In this attorney disciplinary matter, respondent and Disciplinary Counsel have entered into an agreement under Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to either a definite suspension for a period between eighteen (18) and twenty-four (24) months or an indefinite suspension. We accept the agreement for an indefinite suspension.

*Amstetten Corporation Matter*

Respondent represented Amstetten Corporation, Inc. in a real estate mortgage refinance matter in 1996. The mortgage was refinanced by First Palmetto Savings Bank (First Palmetto). The closing took place in respondent's office on June 20, 1996. As a result of the transaction, respondent was instructed to set up a trust account, file the mortgage documents, and pay the Richland County taxes for the year 1995.

Respondent received $150,000.00 from First Palmetto and allegedly, this amount was deposited into respondent's trust account with Wachovia Bank on June 21, 1996.

Respondent produced financial records which did not include bank statements and checks for the year 1996. Respondent stated he misplaced those financial records. Respondent ordered monthly statements for 1996 from his bank, which reflected a deposit of $150,000.00 on June 21, 1996. However, an examination of respondent's trust account records failed to produce a deposit ticket for the $150,000.00 transaction, or an entry in respondent's Safeguard system.

Respondent's client files on this transaction were examined and the materials did not reflect a ledger card, disbursement sheet, or closing statement to support bank receipt of these funds. Respondent claims he is unable to locate or provide any of the disbursement documents.

Respondent, pursuant to the closing instructions, also was to pay the Richland County taxes for tax year 1995, in the amount of $3,107.79. Respondent admits failing to pay the 1995 taxes, but states the failure was due to an administrative oversight by his secretary.

Pursuant to county procedures, the Richland County Treasurer's Office auctioned off the property of Amstetten Corporation in December 1996, for failure of the property owners to pay the 1995 tax bill. The property was subject to redemption by the owners, upon payment of 1995 taxes, interest, penalties, and the current taxes due for 1996. Respondent and Amstetten Corporation were notified of the sale by letter from the Richland County Treasurer on October 22, 1997.

The Treasurer's letter also indicated the First Palmetto mortgage was not indexed under the number which it was supposed to be indexed. Subsequently, the Treasurer gained knowledge that First Palmetto had an existing mortgage on the property. First Palmetto was notified of the sale and the requisite actions necessary to redeem the property, prior to the actual sale.

Respondent, as a result of the June 20, 1996 closing, was supposed to file the First Palmetto mortgage reflecting the $150,000.00 refinancing transaction. Respondent admits he did not file the mortgage in a timely fashion. Further, an examination of respondent's client file regarding this matter failed to produce any document reflecting that the new mortgage was filed by respondent after the June 20, 1996 closing and prior to July 24, 1997. Respondent's 1996 financial records were also examined and they failed to yield a receipt or a copy of the check written to the county RMC office to pay for the filing of the mortgage.

Respondent failed to respond to a representative of First Palmetto's repeated telephone calls about this matter. Respondent also failed to communicate with First Palmetto's counsel. Respondent stated he felt it more appropriate to go through his title insurance company's lawyer and let that lawyer deal directly with counsel for the lender.

Respondent eventually filed the mortgage on July 24, 1997; however, the mortgage was rejected by the RMC office for failing to have the requisite signatures. The mortgage was

refiled on October 31, 1997. The check written from respondent's trust fund account payable to RMC, while dated June 20, 1996, was not negotiated until July 1997, corresponding to the filing date.

Respondent admits between June 20, 1996 and October 14, 1997, that $2,977.99 of the client's $3,107.79, being held in trust to pay the 1995 county taxes, was misappropriated and converted to purposes other than for which it was intended. Further, respondent admits he deposited and commingled personal funds into the trust account to make up for the shortage of client funds.

In a letter to Disciplinary Counsel regarding this matter, respondent made several false statements.

### Other Trust Account Violations

Respondent misappropriated funds for his own use by repaying personal loans, and paying for personal and family expenses. Respondent also commingled personal funds with client funds.

### Jeffcoat/Gore Matter

Respondent represented client Ronald McCombs relative to a personal litigation matter during 1996 and 1997. A deposition of Jacquelyn McCombs was taken on March 8, 1996. Respondent ordered a copy of the deposition from court reporter, Annette Gore. Respondent admits ordering and receiving the deposition, as well as receiving the invoice of $629.20. Respondent admits he did not pay Gore when the invoice arrived. He states the payment of the bill was the responsibility of his client and that the bill was not paid in a timely manner because he could not collect payment from his client.

After retaining a lawyer who corresponded with respondent, respondent made partial payment to Gore. When respondent failed to completely pay, Gore retained another lawyer, Samuel L. Jeffcoat. Jeffcoat filed a non-jury complaint in magistrate's court on or after March 17, 1997. Respondent filed an answer asserting he did not contract with the court reporter and the contract was between his client and Gore.

A hearing was held, although respondent failed to appear due to a conflict in court schedules. Judgment was entered against respondent in the amount of the balance of the debt plus $100.00. Respondent has appealed this judgment, and part of the defense is respondent's reliance on an Ethics Advisory Opinion, which states the client is responsible for deposition costs in specific circumstances.

### Kimberly Engelke Matter

Kimberly Engelke submitted a letter of complaint to the Office of Disciplinary Counsel on August 5, 1997. Engelke is respondent's client in a divorce action. The letter stated respondent has failed to communicate with her, has misinformed her as to whether certain documents were being filed, and has not followed through on actions respondent stated he would perform in the furtherance of her case.

In a final divorce hearing, dated August 13, 1997, Engelke stated on the record that she was satisfied with the advice and counsel her attorney had given her. Respondent, in a letter to the Office of Disciplinary Counsel, stated he had written to the court reporter of that hearing and requested a copy of the transcript to verify Engelke's statement. However, respondent received the transcript and failed to submit the transcript to the Office of Disciplinary Counsel for review immediately upon receipt.

A notice of full investigation was submitted to respondent which included allegations that respondent had failed to provide proof of the client's posture to the Office of Disciplinary Counsel. Respondent submitted a response which stated he had received the hearing transcript and that the transcript supports his position.

Respondent was interviewed by an investigator, during which respondent provided a copy of the transcript, and stated his failure to provide the transcript to the Office of Disciplinary Counsel was an oversight due to matters in his professional and personal life.

### Disciplinary Counsel (complainant)

A fee dispute arose between respondent and a client, John F. Flannery. As a result, a fee dispute application was filed

with the Fee Dispute Board on September 3, 1996. A hearing before the Board was held and the Board recommended the matter be resolved by respondent reimbursing Flannery $500.00. Flannery notified the Board on March 21 and April 27, 1998 that respondent had failed to pay the amount of $500.00. A letter of information was submitted to Disciplinary Counsel who wrote to respondent requesting a reply within fifteen days. The letter was hand delivered to respondent during his interview with an investigator. There was a misunderstanding between respondent and the investigator as to when respondent's written response was due. Respondent has since provided a written response.

### Conclusion

Respondent has violated numerous provisions of the Rules of Professional Conduct contained in Rule 407, SCACR. Respondent converted client funds for his own purposes and failed to keep complete records of his trust account funds. Rule 1.15. He failed to provide competent representation. Rule 1.1. He failed to act with reasonable diligence and promptness. Rule 1.3. He failed to keep his client reasonably informed about the status of the case and respond to requests. Rule 1.4. Respondent brought or defended a proceeding, or asserted or controverted an issue which was frivolous. Rule 3.1. He knowingly made false statements of a material fact to a tribunal. Rule 3.3. Respondent failed to make truthful statements to others. Rule 4.1. He failed to have respect for the rights of others. Rule 4.4. He knowingly made false statements to the Office of Disciplinary Counsel, failed to disclose facts to that office, and failed to respond to a lawful demand for information from that office. Rule 8.1(a) & (b). He engaged in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of Rule 8.4(a), (d), & (e).

Accordingly, respondent is suspended indefinitely. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of this Court showing that he has complied with Rule 30 of Rule 413, SCACR.

INDEFINITE SUSPENSION.